IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIC BYERS,  )
    Petitioner,  )
 )  Civil Action No. 13-306 Erie
v.  )  Magistrate Judge Susan Paradise Baxter
WARDEN D. ZICKEFOOSE, et al.,  )
    Respondents.  )

# **OPINION**[1]

Pending before the Court is a petition for a writ of habeas corpus filed by Petitioner, federal prisoner Eric Byers, pursuant to 28 U.S.C. § 2241. He is challenging a disciplinary action taken against him in which he lost good time credits. As relief, he seeks an order from this Court directing that his incident report be expunged so that he may be restored the good time credit he lost as a sanction.

For the reasons set forth below, the petition is denied.

## I.

### A.    Relevant Factual Background

At the time of the incident at issue in this case, Petitioner was designated at FCI Fort Dix in Fort Dix, New Jersey. On January 20, 2012, a cell phone was discovered in Unit 5752, Room 347. The phone was sent to the Central Office Intelligence Section to be unlocked and analyzed. On March 12, 2012, Officer Pellicano, a Special Investigative Services Technician, received a report concerning the SIM card that was located in the cell phone. The report indicated that four telephone numbers found on the phone's SIM card matched numbers designated as belonging to Petitioner's family members on his approved phone list. (Resp's Ex. 2, ECF No. 12-4 at 5).

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

An investigation was conducted by Lieutenant Lampley of FCI Fort Dix on March 30, 2012. (Id. at 6). The investigation revealed that the following numbers had been placed on Petitioner's approved phone list and called by Petitioner from the cell phone:

1. Phone number 501-612-6350 was on Petitioner's approved phone list and labeled as his "Sibling";

2. Phone number 757-340-7199 was on Petitioner's approved phone list and labeled as his "Sibling";

3. Phone number 757-918-5291 was on Petitioner's approved phone list and labeled as his "Friend"; and,

4. Phone number 757-497-6857 was on Petitioner's approved phone list and labeled as his "Parent."

(Id. at 5, 16). The investigation also revealed that the phone number associated with Petitioner's "Parent" had made five deposits into Petitioner's inmate trust account from December 16, 2011, through March 5, 2012, for a total of $300.00. (Id. at 20). Petitioner also had called one of the phone numbers associated with a "Sibling" fifteen times through the BOP's monitored phone system between October 2, 2010, and March 11, 2011. (Id. at 14).

On March 30, 2012, Petitioner was charged with Possession, Manufacture, or Introduction of a Hazardous Tool (Aiding or Attempting), Prohibited Act Code 108A.[2] (Id. at 2). Lieutenant Lampley interviewed Petitioner and Petitioner told him that Lieutenant Davis witnessed the incident. However, when Lieutenant Davis was contacted he stated: "I don't know anything about this inmate." (Id. at 6). Lieutenant Lampley referred the matter to the Unit Discipline Committee ("UDC"). The Incident Report was given to Petitioner on that same day (March 30, 2012). (Id. at 5).

---

[2] Code 108 prohibits possession, manufacture, or introduction of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety). This Code section lists "hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device" as examples of hazardous tools. BOP Program Statement 5270.09, Inmate Discipline, 44. In all categories of severity, aiding another person to commit any of these offenses, attempting to commit them, or making plans to commit them, is considered equivalent to committing the offense itself. In these cases, the letter "A" is combined with the offense code. (Id. at 10.)

2

Petitioner had a hearing before the UDC on April 4, 2012. The UDC found that Petitioner committed the prohibited acts as alleged, and referred the matter to the Disciplinary Hearing Officer ("DHO"). (Id. at 5-7). On that date, Petitioner signed a form acknowledging that he was advised of his rights at the DHO hearing. (Id. at 8). He stated that he did not wish to have a staff representative. He did request that Lieutenant Davis be called as a witness at the DHO hearing. (Id. at 9).

Petitioner's DHO hearing was held on April 19, 2012. (Id. at 2). The DHO read Petitioner his rights, and Petitioner stated he understood them. (Id.) Once again, Petitioner waived his right to have the assistance of a staff representative. (Id.) Although he had previously requested that Lieutenant Davis be called as a witness, at the DHO hearing Petitioner requested no witness. (Id.) When asked if he wanted to make a statement on his behalf, Petitioner stated: "757-340-7199, that number is not on my list. I have no knowledge of how that number was dialed from that cell phone." (Id.) After considering the evidence, including the forensic and investigative reports as well as Petitioner's statements, the DHO found that Petitioner committed the prohibited act. (Id. at 2-3). The DHO imposed the following sanctions: disallowance of 40 days of good conduct time, 15 days of disciplinary segregation, and loss of email and telephone privileges for 60 days. (Id. at 3). Petitioner was provided a copy of the DHO Report on May 25, 2012. (Id. at 4).

After having no success in his administrative remedy appeal, Petitioner, who at the time was incarcerated at FCI McKean, which is located within the territorial boundaries of the Western District of Pennsylvania, commenced habeas proceedings in this Court by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 4). In relevant part, 28 U.S.C. § 2241 provides: "The writ of habeas corpus shall not extend to a prisoner unless … [h]e is in custody *in violation of the Constitutional or laws or treaties of the United States*[.]" 28 U.S.C. § 2241(c)(3) (emphasis added). Petitioner contends that his due process and equal protection rights were violated during the disciplinary

3

proceeding. Respondents filed an Answer (ECF No. 12), in which it is contended that the petition should be denied on the merits, and Petitioner has filed a Reply (ECF No. 13).

**B.     Subject Matter Jurisdiction**

This Court has jurisdiction over the instant petition under 28 U.S.C. § 2241, which "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the *execution of his sentence*." McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010) (emphasis added) (quoting Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001) and citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005)). In McGee, the Third Circuit Court instructed that "the question to be asked is whether granting the petition would 'necessarily imply' a change to the fact, duration, or execution of the petitioner's sentence." 627 F.3d at 936. In another case, it held that "[a] challenge, such as this one, to a disciplinary action that resulted in the loss of good-time credits, is properly brought pursuant to § 2241, as the action could affect the duration of the petitioner's sentence." Queen v. Miner, 530 F.3d 253, 254 (3d Cir. 2008) (per curiam) (citations omitted).

**C.     Discussion**

   **1.     Petitioner Has Not Established That He Is In Custody In Violation of the Constitution or laws of the United States**

This Court's analysis of Petitioner's due process claims must begin with the Supreme Court's decision in Wolff v. McDonnell, 418 U.S. 539 (1974), which is the seminal case concerning the due process rights of federal prisoners during disciplinary proceedings. In that case, the Supreme Court noted that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. Wolff, 418 U.S. at 556-57. However, the Supreme Court noted further that this does not entitle prisoners to the full panoply of

4

rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding. Id. Instead, a prisoner is entitled only to procedures sufficient to ensure that the protected interest (i.e., good time credit) "is not arbitrarily abrogated." Id. at 557.

In Wolff, the Supreme Court enumerated several procedural safeguards that are required in a prison disciplinary proceeding. It stated that an inmate subject to a prison disciplinary proceeding must be afforded the following due process safeguards: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact finder as to the evidence relied upon and the rationale behind the disciplinary action. Id. at 563-72.

The BOP also has established regulations that set forth the procedures for disciplinary actions. These regulations track the requirements set forth in Wolff, and in some respects exceed the required process set forth in that case. See Inmate Discipline and Special Housing Units, See 28 C.F.R. §§ 541.1-8 (2012). Pursuant to these regulations, staff prepare an Incident Report when they reasonably believe an inmate has committed a violation of BOP regulations. 28 C.F.R. § 541.5(a). The investigator may decide to refer the incident to the UDC for an initial hearing. Id. § 541.5(3); id. § 541.7. The UDC hearing is ordinarily held within five working days from the time staff became aware of the inmate's involvement in the incident, not including the initial day staff learns of the incident, weekends or holidays. Id. § 541.7(c). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to the DHO for a hearing. Id. § 541.7(a).

5

An inmate's rights during a DHO hearing are set forth at § 541.8 (2012). These procedures require the following: (1) 24-hour advance written notice of charge before the inmate's initial appearance before the DHO; (2) An inmate shall be provided a staff representative at the DHO hearing, if so desired; (3) An inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; (4) the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses (although he may submit questions for requested witnesses in writing to the DHO); (5) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized.

Petitioner has failed to establish that he was denied any process due to him under the Due Process Clause or applicable BOP regulations. He appeared before an impartial decision making body on April 19, 2012. He received notice of the charges at least 24 hours in advance of the DHO hearing, by way of receiving his copy of the Incident Report on March 30, 2012. Petitioner was afforded the opportunity to have a staff representative at his DHO hearing, and he waived that right. He also was afforded the opportunity to call witnesses and present evidence. He called no witnesses, and offered a statement on his behalf as evidence. He was present throughout the UDC and DHO hearings, and participated in each. Finally, Petitioner received a written copy of the DHO Report, which summarized the evidence relied upon and the rationale behind the disciplinary action, on May 25, 2012. As such, Petitioner was afforded all procedural protections in the processing of this disciplinary action.

Petitioner's allegation that he was not provided a copy of his Incident Report within 24 hours of staff becoming aware of the incident[3] is rejected. The investigation in his case concluded on March 30, 2012, and Petitioner was provided a copy of his Incident Report that same date.

---

[3] As Respondents point out, Petitioner did not raise this issue before the DHO at his hearing, when it could have been addressed in the record.

Petitioner also alleges that his due process rights were violated because the Incident Report fails to identify which staff member initially found the phone and that this omission precluded him from calling a witness. This argument has no merit. Petitioner was afforded the opportunity to call witnesses and present evidence on his behalf. If Petitioner had questions regarding the Incident Report, he could have addressed them with a staff representative, or raised them at the DHO hearing. He waived his right to a staff representative, and stayed silent concerning this issue at his hearing. Moreover, the identity of the person who recovered the phone was not a central issue to the allegations against him or his defense. At his DHO hearing, Petitioner stated one of the numbers found on the phone was not on his approved phone list. He has not demonstrated how knowing the identity of the person who recovered the phone would have advanced his defense in any way.

Based upon all of the foregoing, the Court concludes that Petitioner's due process rights were not violated during the disciplinary process.

**2.      The DHO's Determination Was Supported By the Requisite Degree of Evidence**

To the extent that Petitioner contends that the DHO erred in finding that he committed the prohibited act of Possession, Manufacture, or Introduction of a Hazardous Tool (Aiding or Attempting), Prohibited Act Code 108A, that claim is denied. In Superintendent v. Hill, 472 U.S. 445 (1985), the Supreme Court held that "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary [officer] are supported by some evidence in the record." 472 U.S. at 454 (internal quotation marks and citation omitted). The Hill standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. Brown v. Recktenwald, 550 F.App'x 96, 98 (3d Cir. 2013) (citing Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989)). The relevant inquiry

is whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. (quoting Hill, 472 U.S. at 455-56). The United States Court of Appeals for the Third Circuit has explained that "the 'some evidence' standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding." Denny v. Schultz, 708 F.3d 140, 144 (3d Cir. 2013) (citing Brown v. Fauver, 819 F.2d 395, 399 n.4 (3d Cir. 1987)).

Petitioner has failed to establish that there was not "some evidence" to support the DHO's findings. The DHO relied upon the forensic analysis of the SIM card found in the cell phone. That report identified four phone numbers that were called on that cell phone and that were attached to Petitioner's approved phone list as a friend, sibling, or parent. When given the opportunity to offer evidence on his own behalf, Petitioner stated only that one of the numbers was not on his list. This statement was contradicted by the record. Petitioner did not address the other numbers listed in the report and attached to him.

Based upon all of the forgoing, there was more than sufficient evidence to support the DHO's finding that Petitioner committed the prohibited act as charge and Petitioner's due process rights were not violated for lack of evidence.

### 3. The BOP Did Not Violate Petitioner's Equal Protection Rights

Petitioner argues his case should have been expunged like those of allegedly similarly-situated inmates, which appears to be an Equal Protection argument. As Respondents contend, this argument is similar to the one raised and considered by the Third Circuit in Ryan v. Scism, 474 F.App'x 49 (3d Cir. 2012) (unreported). In June 2010, while incarcerated at FCI Fort Dix, Ryan was found in possession of, among other things, a cell phone, and charged with Possession of a Hazardous Tool, Code 108. Ryan,

8

474 F.App'x at 50. As here, Ryan argued that he had been treated differently from other inmates similarly situated in violation of the Equal Protection Clause. Id. 52. The Ryan court noted that the Equal Protection Clause requires that all people similarly situated be treated alike. Id. (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). It further explained that a petitioner alleging a violation of the right to equal protection has the burden to prove "the existence of purposeful discrimination." Id. (citing McCleskey v. Kemp, 481 U.S. 279, 292 (1987)). The court then noted that Ryan must prove that he received different treatment from that received by other individuals similarly situated and that BOP acted with discriminatory purpose. Id.; Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009). In denying his Equal Protection claim, the Third Circuit held that Ryan failed to offer evidence that the inmates he cited were similarly situation to him. Id. at 52-53.

Similar to the facts in Ryan, Petitioner has failed to prove that the inmates he contends had their charges "expunged" were, in fact, similarly situated to him. He also has failed to establish that BOP acted with the requisite discriminatory purpose. Accordingly, his Equal Protection claim has no merit.

**D.     Certificate of Appealability**

28 U.S.C. § 2253 codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000) (en banc), abrogated on other grounds by Gonzalez v. Thaler, 132 S.Ct. 641 (2012); 28 U.S.C. § 2253(c)(1)(B). As such, this Court makes no certificate of appealability determination in this matter.

9

**II.**

For the foregoing reasons, the petition for a writ of habeas corpus is denied. An appropriate order follows.

Dated: March 19, 2015

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge